**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

AUG 23 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UPPI LLC, qui tam as Relator, | No. 21-35905 |
| Plaintiff-Appellant, | D.C. No. 2:17-cv-00378-RMP |
| and | |
| UNITED STATES OF AMERICA, | MEMORANDUM[*] |
| Plaintiff, | |
| v. | |
| CARDINAL HEALTH, INC.; CARDINAL HEALTH 414 LLC, DBA Cardinal Health Nuclear Pharmacy Services; CARDINAL HEALTH 200 LLC; D'S VENTURES LLC, DBA Logmet Solutions LLC; CARING HANDS HEALTH EQUIPMENT & SUPPLIES LLC; OBIE B. BACON; DEMAURICE SCOTT; OTHER UNNAMED SMALL BUSINESS FRONT COMPANIES; UNNAMED INDIVIDUALS, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, District Judge, Presiding

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted August 9, 2022
Anchorage, Alaska

Before: S.R. THOMAS, McKEOWN, and CLIFTON, Circuit Judges.

Relator UPPI LLC appeals from the district court's order granting the motions to dismiss Relator's qui tam complaint alleging violations of the False Claims Act (FCA). *See* 31 U.S.C. § 3729(a)(1). Defendants are Cardinal Health,[1] Caring Hands Health Equipment & Supplies LLC, its owner Obie B. Bacon, Logmet Solutions LLC, and its owner DeMaurice Scott. We review de novo, *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1117 (9th Cir. 2022), and reverse.

We raise the issue of appellate jurisdiction sua sponte and conclude, despite some ambiguity in the district court's order, that the order was final and appealable. *See Unified Data Servs., LLC v. FTC*, 39 F.4th 1200, 1207 (9th Cir. 2022); *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 983 (9th Cir. 2000); *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Turning to the merits, the district court dismissed the complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a well-pleaded complaint must be plausible. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

---

[1] We refer to several related defendants collectively as Cardinal Health: Cardinal Health 414, LLC, Cardinal Health 200 LLC, and Cardinal Health, Inc.

Federal Rule of Civil Procedure 9(b) also requires that the facts establishing fraud be pleaded with "particularity." "To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged,' as well as 'what is false or misleading about [the purportedly fraudulent] statement, and why it is false.'" *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (alteration in original) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).

The complaint in this case centers around what Relator describes as a "rent-a-vet" scheme, in which a large company exploits the statutory and regulatory preferences given to service-disabled veteran owned small businesses (SDVOSBs) in government contracting. The defendants—large enterprise Cardinal Health and SDVOSBs Caring Hands and Logmet—allegedly misled the government into awarding contracts to the SDVOSBs for the supply and distribution of radiopharmaceutical products to Veterans Affairs (VA) hospitals. The complaint alleges that in reality, Cardinal Health performed the vast majority of the work and kept the majority of the revenue, while the SDVOSBs took only a small cut for doing some nominal invoicing.

"[T]he essential elements of False Claims Act liability are: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due."

21-35905

*United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017). The district court held that the first amended complaint (FAC) failed to plead (a) falsity and (b) materiality with sufficient particularity and plausibility to survive dismissal. We disagree.

As to falsity, the FAC presents two theories under which the defendants might be liable for false statements: promissory fraud, or fraud in the inducement, and implied false certification. The FAC viably pleads falsity under either theory.

Under the promissory fraud theory, "liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct." *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006). "[I]n the context of the complaint as a whole," the FAC "adequately allege[s] the who, what, when, where and how of the alleged fraud" with sufficient particularity. *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1181 (9th Cir. 2016). The eight specific contracts are identified in the FAC and, indeed, are themselves in the record. The who (defendants), what (those eight contracts), where (in the locations identified in the contracts), when (at the time the contracts were bid on, negotiated, and executed), and how (by falsely promising that the SDVOSBs would perform the contract) are adequately discernable such that Rule 9(b)'s purposes of providing defendants'

notice of their alleged wrongdoing and deterring frivolous fraud lawsuits are fulfilled. *See id.* at 1180.

The district court found irrelevant "whether the supply contracts must legally have contained a subcontracting limitation . . . because contractual requirements have no bearing on the truthfulness of Defendants' statements or representations." It is true that the FCA is not designed to "punish[] garden-variety breaches of contract." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 194 (2016). But false promises in the contract can constitute false statements under the FCA. *See Hendow*, 461 F.3d at 1174–75.

> [F]ailure to honor one's promise is (just) breach of contract, but making a promise that one *intends* not to keep is fraud. If the [defendant] knew about the rule and told the [government] that it would comply, while planning to do otherwise, it is exposed to penalties under the False Claims Act.

*Id.* at 1174 (alterations omitted) (quoting *United States ex rel. Main v. Oakland City Univ.*, 426 F.3d 914, 917 (7th Cir. 2005)).

Here, if the SDVOSBs agreed to comply with the subcontracting limitations but had no intent to do so, as the FAC alleges, the falsity element is met under a promissory fraud theory. Any dispute over the meaning of contractual terms is a question inappropriate for resolution at the motion to dismiss stage. *See Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1118 (9th Cir. 2018) ("If a contract is ambiguous, it presents a question of fact inappropriate for resolution on a motion to dismiss.").

Under the false certification theory, "when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment. But if the claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement[,] the defendant has made a misrepresentation that renders the claim 'false or fraudulent' under § 3729(a)(1)(A)." *Campie*, 862 F.3d at 901 (alterations omitted) (quoting *Escobar*, 579 U.S. at 180).

> The Supreme Court [in *Escobar*] held that although the implied certification theory can be a basis for liability, two conditions must be satisfied. First, the claim must not merely request payment, but also make specific representations about the goods or services provided. Second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements must make those representations misleading half-truths.

*Id.* (quotation marks, citations, and alterations omitted).

In this case, the thrust of Relator's implied false certification theory is that the SDVOSB defendants submitted invoices that identified themselves (Caring Hands or Logmet) as the entity fulfilling the contract. In reality, Cardinal Health supplied and distributed the radiopharmaceuticals for which the government was invoiced. This allegedly constituted a "misleading half-truth[]," *id.*, because the invoices failed to disclose noncompliance with the subcontracting limitations.

Relator's false certification claim was pleaded with sufficient particularity under Rule 9(b). Relator did not identify particular invoices, but it was not required to do so. *Ebeid*, 616 F.3d at 999. Instead, it was enough "to allege particular details

of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.* at 998–99 (quotation marks and citation omitted). The FAC identified the specific contracts at issue, alleged that the fraudulently certified invoices were issued "pursuant to the relevant contracts," and contended that the government in fact paid the defendants under those contracts. And Relator identified the details of a scheme under which those invoices contained impliedly false certifications of compliance with contractual, regulatory, and statutory requirements—that by identifying the SDVOSB defendants as "authorized distributors, or something similar," in the invoices, they impliedly certified compliance with the subcontracting limitations and the contractual promises that the identified SDVOSB, not a large business, would perform the promised work. *See Campie*, 862 F.3d at 902–03.

Under either theory, the allegations of falsity were sufficiently plausible. The district court concluded that the complaint was insufficiently plausible because "the VA was aware of Cardinal Health's involvement at the time that the VA awarded and paid claims on the contract." That is not the fair import of the Relator's complaint, which alleges that even if the defendants disclosed, at least implicitly, that Cardinal Health would somehow be *involved*, they failed to disclose the *extent* of its involvement and "the extremely limited role [the SDVOSBs] intended to play." Concluding the VA had actual knowledge of Cardinal Health's

performance on the contract required the district court to make inferences in the *movants'* favor, which is impermissible at the motion to dismiss stage. *See Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017).

As to materiality, "the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Materiality is "demanding." *Escobar*, 579 U.S. at 194. We have interpreted *Escobar* as "creating a 'gloss' on the analysis of materiality" that requires a court to consider three factors: (1) whether the government's "payment was conditioned on compliance with the [statutory, regulatory, or contractual requirement]," (2) the government's "past enforcement activities," i.e., "how [it] has treated similar violations," and (3) the magnitude of the violation. *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1020 (9th Cir. 2018).

In concluding that any falsities were immaterial, the district court again relied on a purported concession by Relator that the VA had actual knowledge of Cardinal Health's involvement, and as a result, it did not apply the other *Escobar* factors. But, as explained above, the Relator made no such concession. Although the evidence might ultimately show that the VA was well aware of the defendants' arrangement, that is not clear from the face of the complaint.

Applying the *Escobar* factors, the complaint pleads materiality with

sufficient particularity and plausibility. First, as to whether the government conditions payment on compliance with the subcontracting limitations, set-aside contracts are allegedly conditioned on SDVOSB qualifications, which we think is enough for this factor to weigh toward materiality. Second, as to whether the government "regularly pays a particular type of claim in full despite *actual knowledge* that certain requirements were violated," *Rose*, 909 F.3d at 1022 (citing *Escobar*, 579 U.S. at 195), again, the complaint does not concede the VA had actual knowledge. And the FAC included allegations that the government has terminated contracts or prosecuted these kinds of violations in the past, including against Logmet, providing at least modest support for materiality under this factor. Finally, as to magnitude, if the allegations in the complaint are true, the SDVOSBs did far less than the required 51% of the work on the contracts (playing only a "*de minimis* role" per the FAC), and noncompliance was likely not "minor or insubstantial." *Id.* (quoting *Escobar*, 579 U.S. at 194).

For the above reasons, the complaint adequately pleads falsity and materiality to survive Rule 12(b)(6) dismissal. The alternative grounds presented by defendants on appeal in support of affirming dismissal should be considered by the district court in the first instance.

**REVERSED and REMANDED.**

21-35905